# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KENNETH S. SPENCER, JR.,** *et al.*, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **ISLAMIC REPUBLIC OF IRAN,** ) <br> ) <br> **Defendant.** ) <br> ) | Civil No. 12-42 (RCL) |

## MEMORANDUM OPINION

This action arises out of the devastating 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon. The attack decimated the facility, killed 241 U.S. servicemen and wounded many others, leaving scars both physical and psychological on the survivors. Some of these servicemen or their estates, joined by various family members, now bring suit against defendant Islamic Republic of Iran. Their action is brought pursuant to the state-sponsored terrorism exception to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 et seq., which was enacted as part of the National Defense Authorization Act for Fiscal Year 2008. Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008). That provision, codified at 28 U.S.C. § 1605A, provides "a federal right of action against foreign states" that sponsor terrorist acts. *Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 4 (D.D.C. 2011) (internal citation and quotation marks omitted).

## I. LIABILITY

On June 27, 2013, this Court took judicial notice of the findings of fact and conclusions of law in *Peterson v. Islamic Republic of Iran*, which also concerns the 1983 Marine barracks

bombing in Beirut. Memorandum & Order at 2, June 27, 2013, ECF No. 34. The judicially noticed evidence presented in *Peterson* along with uncontroverted affidavits presented by plaintiffs alleging that all plaintiffs were killed or injured by the attack—or were related to persons who were—was sufficient to establish liability under 28 U.S.C. § 1605A. *See id.* The Court entered judgment in favor of the plaintiffs and against Iran with respect to liability. *Id.* at 3. The Court then referred this action to a special master for consideration of plaintiffs' claims for damages. *Id.* at 4. Since the issue of liability has been previously settled, the Court now turns to examine the damages recommended by the special master.

## II. DAMAGES

Damages available under the FSIA-created cause of action "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). Accordingly, those who survived the attack may recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). Section 1605A's private right of action is available to, among others, "a national of the United States." 28 U.S.C. § 1605A(c)(1). Uncontroverted affidavits submitted to the Court affirm that all plaintiffs in this suit are U.S. citizens and, therefore, eligible to recover under the FSIA.

"To obtain damages against a non-immune foreign state under the FSIA, a plaintiff must prove that the consequences of the foreign state's conduct were 'reasonably certain' (i.e., more likely than not) to occur, and must prove the amount of damages by a 'reasonable estimate' consistent with this [Circuit]'s application of the American rule on damages." *Salazar v. Islamic*

*Republic of Iran*, 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005) (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003)) (internal quotation marks omitted). As discussed in *Peterson II*, plaintiffs have proven that the defendant's commission of acts of extrajudicial killing and provision of material support and resources for such killing was reasonably certain to—and indeed intended to—cause injury to plaintiffs. *Peterson v. Islamic Republic of Iran (Peterson II)*, 515 F. Supp. 2d 25, 37 (D.D.C. 2007). In cases brought under section 1605A, a court may consider prior damage awards for pain and suffering and solatium as examples for determining an appropriate award for each plaintiff. *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 29 (D.D.C. 2008).

The Court hereby ADOPTS, just as it has in other cases arising from the Marine barracks bombing in Beirut, all facts found by and recommendations made by the special master relating to the damages suffered by all plaintiffs in this case. *See, e.g.*, *id.* at 52–53; *Valore*, 700 F. Supp. 2d at 82–83; *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 154 (D.D.C. 2011). However, if the special master has deviated from the damages framework that this Court has applied in previous cases, "those amounts shall be altered so as to conform with the respective award amounts set forth" in the framework. *Peterson II*, 515 F. Supp. 2d at 52–53. The final damages awarded to each plaintiff are contained in the table located within the separate Order and Judgment issued this date, and the Court discusses below any alterations it makes to the special master's recommendations.

### A. Pain and Suffering

Assessing appropriate damages for pain and suffering can depend upon a myriad of factors, such as "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of

3

his or her life." *Id.* at 52 n.26 (internal citation and quotation marks omitted). It is important that the Court provide similar damage awards to plaintiffs suffering similar injuries. *Valore*, 700 F. Supp. 2d at 84. In previous FSIA cases arising from the Marine barracks bombing, the Court worked from a baseline pain and suffering award of $5 million to victims of the attack who suffered physical injuries like "compound fractures, severe flesh wounds, and wounds and scars from shrapnel." *Id.* at 54. In applying this general approach, the Court has explained that it will "depart upward from this baseline to $7.5–$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadripeligic, partially lost vision and hearing, or were mistaken for dead," and will "depart downward to $2–$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire." *Id.* When a victim suffers severe emotional injury without physical injury, the Court has previously deemed $1.5 million to be an appropriate award. *Estate of Bland*, 831 F. Supp. 2d at 155. If a plaintiff's death was instantaneous, they cannot receive an award for pain and suffering. *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.D.C. 2000). If evidence presented to the fact finder demonstrates that the plaintiff survived for a very brief period of time before death, i.e. a matter of minutes, a pain and suffering award of as much as $1 million has been deemed appropriate. *Id.* at 112–13.

After reviewing the special master reports, the Court finds that the special master correctly applied the damages framework outlined in *Peterson* and *Valore*, including with respect to appropriate downward and upward departures, and ADOPTS all of the special master awards for pain and suffering.

    **B.**    **Economic Loss**

The estates of David Brown and Jesse James Ellison seek economic damages for lost accretions to the estate resulting from the decedents' deaths in the bombing. These plaintiffs have proven to the satisfaction of the special master, and thus to the satisfaction of the Court, the existence and amount of these losses. *See Valore*, 700 F. Supp. 2d at 85. The Court therefore ADOPTS without modification the damage awards for economic loss recommended by the special master.

### C. Solatium

Solatium claims under the FSIA are functionally identical to claims for intentional infliction of emotional distress. *Id.* They are intended to compensate persons for "mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience . . . as well as the harm caused by the loss of the decedent's society and comfort." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 25 (D.D.C. 2011) (internal citation and quotation marks omitted). Such claims are also available to compensate along similar lines those related to persons merely injured, rather than killed, in a terrorist attack. *Id.* at 26 n.10. Courts may presume that spouses and those in direct lineal relationships with victims of terrorism suffer compensable mental anguish. *See Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 30 (D.D.C. 1998) (discussing solatium damages under the prior version of the statutory state-sponsored terrorism exception to foreign sovereign immunity). As for siblings, testimony proving a close emotional relationship will usually be sufficient to sustain claims for solatium. *Id.* Half-blood siblings are presumed to recover at the same level as full-blood siblings would, *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 75 (D.D.C. 2010), unless the evidence indicates that such individuals did not have a close relationship with the victim, *Estate of Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 44 (D.D.C. 2012).

This Court developed a standardized approach for evaluating solatium claims in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), where it surveyed past awards to family members of victims of terrorism to determine that, based on averages, "[s]pouses typically receive greater damage awards than parents, who, in turn, typically receive greater awards than siblings." *Id.* at 269. The Court further concluded that the relatives of deceased victims usually receive greater awards than those of victims that survived. *Id.*

Relying upon its evaluation of past average awards, the *Heiser* Court articulated a framework in which spouses of deceased victims were awarded approximately $8 million, parents received $5 million, and siblings received $2.5 million. *Id.*; *see also Valore*, 700 F. Supp. 2d at 85 (observing that this framework has been adopted by other courts as an appropriate measure of solatium damages for the family members of victims of the Marine barracks bombing in Beirut). Awards of $3 million to the children of deceased victims are typical. *Anderson v. Islamic Republic of Iran*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012).

As this Court recently explained, in the context of distress resulting from *injury* to loved ones—rather than death—courts have applied a framework where "awards are valued at half of the awards to family members of the deceased: $4 million for spouses, $2.5 million for parents, and $1.25 million for siblings." *Valore*, 700 F. Supp. 2d at 85. Children of a surviving victim receive $1.5 million on average. *Anderson*, 839 F. Supp. 2d at 266.

In applying this framework, however, courts must be wary that "[t]hese numbers . . . are not set in stone," *Murphy*, 740 F. Supp. 2d at 79, and that deviations may be warranted when, for example, "evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship; medical proof of severe pain, grief or suffering on behalf of the claimant [is

presented]; and circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27.

One such deviation from the framework articulated above occurs in situations when a proposed solatium award would exceed the pain and suffering award received by a surviving victim. This Court held in *Estate of Bland*, that it was inappropriate for family members to receive a larger solatium award than the injured serviceman's award for pain and suffering. *Estate of Bland*, 831 F. Supp. 2d at 158. The Court was evaluating the solatium claim of the wife of a serviceman who had suffered severe emotional injury but no physical injury attributable to the bombing. *Id.* The Court proportionally reduced the wife's solatium award to $1 million and the children's solatium awards to $750,000 because the injured serviceman's award had been only $1.5 million. *Id.*

With this legal background in mind, the Court ADOPTS all of the facts found and recommendations made by the special master concerning solatium awards unless otherwise discussed below. The Court concludes that the special master's recommendations should be altered in one respect. Furthermore, the Court will specifically discuss its reasons for adopting the special master's recommendations in two instances where the recommendations are not squarely supported by prior precedent.

### 1. Corrections to special master recommendations

First, the special master recommended, and the Court today adopts, compensatory damage awards of $2 million to Kenneth Spencer, Jr. and Steven Joseph Diaz, servicemen injured in the attack. While the special master correctly concluded that the corresponding solatium awards to Spencer and Diaz's family members should be reduced so as not to exceed the servicemen's compensatory damages awards, he departed too far downward from the Court's

7

standard framework. In *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7 (D.D.C. 2012), the Court evaluated solatium claims by family members of servicemen who were awarded $2 million for their pain and suffering arising out of the Marine barracks bombing. *Id.* at 16. The Court concluded that solatium awards of $1 million to the servicemen's parents and $650,000 to their siblings were appropriate, in light of the Court's general approach of reducing the solatium awards of family members in rough proportion to the *Heiser* framework when a serviceman's pain and suffering compensation falls below the Court's baseline. *Id.*

Because the special master did not find circumstances indicating that an upward or downward departure from past practice is warranted here, the Court will slightly increase the respective awards to Spencer and Diaz's family members to conform with the Court's prior application of the *Heiser* solatium framework: $1,250,000 for spouses, $1,000,000 for parents, $900,000 for children, and $650,000 for siblings. *See id.* at 15–16. The Court notes that one of the plaintiffs, Jane Astrid Diaz, has since divorced serviceman Steven Joseph Diaz. The Court need not depart from its usual solatium damages framework as to spouses, however, because evidence presented to the special master indicated that Jane and Steven were married at the time of the bombing and remained married until 2005, Jane suffered compensable emotional trauma as a result of the attack, and at least one witness attributed the dissolution of their marriage to the after effects of the attack. Report of Special Master Concerning Counts VII, VIII, and IX at 13–15, ECF No. 43; *see also Daliberti v. Republic of Iraq*, 146 F. Supp. 2d 19, 26 (D.D.C. 2001) (awarding solatium damages to a group of plaintiff spouses of terror victims, one of whom had since divorced the victim, because of, in part, the "damage to their marriages" caused by the incident).

### 2. Consideration of special master enhancement of Mirbal and Baez awards

The Court also must examine the special master's decision to enhance the solatium awards made to the estates of Andres Alvarado Mirbal and Nerida Tull Baez as it springs from a somewhat novel damages causation theory in these cases arising out of the Marine barracks bombing in Beirut. Mirbal and Baez were the parents of Pedro Alvarado, who received $5 million by the Court's Order and Judgment in *Valore v. Islamic Republic of Iran* for his injuries in the barracks bombing. Order and Judgment, *Valore v. Islamic Republic of Iran*, Civil Action No. 03-1959 (RCL), Mar. 31, 2010, ECF No. 60. Therefore, the baseline award appropriate for Alvarado's parents, if upward or downward departures were not warranted, is $2.5 million. The special master determined, however, that an upward departure was called for because Mirbal and Baez were erroneously informed by the military that their son had been killed in the bombing. Report of Special Master Concerning Count XVI at 5–8, ECF No. 47 (recounting testimony that a Navy officer informed the family that Pedro had died and that his mother had to be medicated at the hospital as a result of the shock). Although they were informed that their son was in fact alive a few hours later, the heightened feelings of anguish and bereavement they suffered, as evidenced by testimony recounting their extreme emotional reaction to the news, led the special master to recommend a damage award of $3.5 million for each. *Id.* at 15–16. He concluded that damages arising from the military's erroneous report of Alvarado's death were legally attributable to Iran's actions as proximately caused by those actions. *Id.*

The Court agrees that Iran is liable for additional damages attributable to this false report and finds that the amount the special master has chosen is appropriate. Section 1605A(c) requires that a state sponsor of terror have "caused" a plaintiff's injury in order for them to recover under the cause of action created by the statute. 28 U.S.C. § 1605A(c). In the context of the statute, "caused" is equivalent to the traditional tort law concept of proximate cause, meaning

9

that there must be "some reasonable connection between the act or omission of the defendant and the damages which the plaintiff has suffered." *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 54 (D.D.C. 2009) (quoting *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004)). The D.C. Circuit, in *Kilburn*, explained that proximate cause normally serves to "eliminate[] the bizarre." *Kilburn*, 376 F.3d at 1128. In determining the full extent of what "reasonable connection" will satisfy the FSIA's proximate cause requirement, the Court notes that the laws of the District of Columbia are "an appropriate model for the development of a federal standard with respect to liability in actions against state sponsors of terrorism." *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 100 (D.D.C. 2009).

The District of Columbia Court of Appeals has interpreted proximate cause to eliminate liability in cases "where the chain of events leading to the injury appears highly extraordinary in retrospect." *District of Columbia v. Carlson*, 793 A.2d 1285, 1290 (D.C. 2002) (internal citation and quotation marks omitted). On the other hand, if injury arises because of an intervening negligent act, a defendant will still be liable if the danger of such a negligent act should have been "reasonably anticipated." *Id.* The Court concludes that the intervening act of military officials negligently misinforming the parents of a serviceman that their child had perished in a terrorist attack is not a "bizarre" intervening event and should have been "reasonably anticipated." The barracks bombing was an evil and cruel attack, intended to cause death, destruction, and emotional devastation. In the chaos and confusion of the period after the attack, it was foreseeable that military officials tasked with responding to it might misidentify the dead and cause further emotional hardship to those intimately affected by the attack. Furthermore, this is precisely the type of circumstance that might render the suffering of family members

"more acute or more agonizing," warranting an upward departure from the Court's standard solatium framework. *See Oveissi*, 768 F. Supp. 2d at 26–27. The chosen award, slightly less than half way between the standard awards for the parents of injured and deceased victims, reflects the additional acute suffering associated with an erroneous report of death while avoiding over compensation considering that the serviceman did not actually perish. Thus, the Court expressly adopts the special master's enhancement of the solatium damage awards to the estates of Andres Alvarado Mirbal and Nerida Tull Baez.

### 3. Consideration of special master's denial of an award to Willard Howell

The Court will also briefly discuss the special master's decision to recommend a complete denial of damages to plaintiff Willard Howell. Report of Special Master Concerning Counts XXVII, XXVIII, and XXIX at 21–22, ECF No. 38. In short, the Court agrees that this recommendation was appropriate and adopts it. In *Estate of Brown*, the Court adopted the special master's recommendation to reduce the solatium award to a serviceman's mother from $5 million to $1 million. *Estate of Brown*, 872 F. Supp. 2d at 44. The Court reasoned that while there was evidence the mother suffered emotional distress upon learning of her son's death, the two of them were separated when the son was five and "there [was] no evidence that she saw him in the subsequent sixteen years." *Id.* Here, Willard Howell separated from Donald's mother in 1973 and kept in touch with his children "off and on." Report of Special Master Concerning Counts XXVII, XXVIII, and XXIX at 11. He was not even aware of Donald's service in the Navy until he was informed several days after the bombing that Donald was stationed in Beirut. *Id.* at 11–12. He did not see his son again until 1995. *Id.* The only evidence of emotional distress was testimony that he was "totally shocked" by the news of the bombing and Donald's presence at the site. *Id.* Any attempt to claim distress on the basis of this reaction, however, is

significantly weakened by his subsequent response: he did not visit his son for 12 years and, in the immediate aftermath of the incident, merely "sent him 50 bucks or something like that." *Id.* The Court is mindful of the rule that a "close personal relationship" is a "prerequisite to a solatium award." *Estate of Brown*, 872 F. Supp. 2d at 44. In light of the special master's findings, the Court concludes that a complete denial of a solatium award for Willard Howell is warranted.

### D. Punitive Damages

In assessing punitive damages, this Court has observed that any award must balance the concern that "[r]ecurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect," *Murphy*, 740 F. Supp. 2d at 81, against the need to continue to deter "the brutal actions of defendants in planning, supporting and aiding the execution of [terrorist attacks]," *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 184 (D.D.C. 2010). To accomplish this goal, this Court—relying on the Supreme Court's opinion in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007)—has held that the calculation of punitive damages in subsequent related actions should be directly tied to the ratio of punitive to compensatory damages set forth in earlier cases. *Murphy*, 740 F. Supp. 2d at 81–82. Thus, in *Murphy*, this Court applied the ratio of $3.44 of punitive damages per dollar of compensatory damages established in *Valore*, an earlier FSIA case arising out of the Marine barracks bombing in Beirut. *Id.* at 82–83 (citing *Valore*, 700 F. Supp. 2d at 52). Here, the Court will again apply this $3.44 ratio, which has been established as the standard ratio applicable to cases arising out of the Marine barracks bombing in Beirut. Application of this ratio results in a total punitive damages award of $351,435,133.44.

### III. CONCLUSION

In closing, the Court applauds plaintiffs' persistent efforts to hold Iran accountable for its cowardly support of terrorism. The Court concludes that defendant Iran must be punished to the fullest extent legally possible for the bombing in Beirut on October 23, 1983. This horrific act harmed countless individuals and their families, a number of whom receive awards in this lawsuit. This Court hopes that the victims and their families may find some measure of solace from this final judgment. For the reasons set forth above, the Court finds that defendant is responsible for plaintiffs' injuries and thus liable under the FSIA's state-sponsored terrorism exception for $102,161,376 in compensatory damages and $351,435,133.44 in punitive damages, for a total award of $453,596,509.44.

A separate Order and Judgment consistent with these findings shall be entered this date.

Signed by Royce C. Lamberth, United States District Judge, on October 14, 2014.